# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
May 14, 2002 Session

## EMILY LEWIS v. LIFE CARE CENTERS OF AMERICA, INC.

### Appeal from the Circuit Court for Hamilton County
### No. 99C1541     L. Marie Williams, Judge

### FILED JULY 12, 2002

### No. E2001-01812-COA-R3-CV

Emily Lewis, a student enrolled in a Certified Nursing Assistant's training program operated and supervised by Nursetrainers, Inc., sues Life Care Centers of America, Inc. The suit seeks damages for injuries resulting to Ms. Lewis, who was taking training to become a Certified Nursing Assistant. As a result of Life Care's negligence, the original complaint alleged several other causes of action, all of which have been abandoned on appeal. We affirm.

**Tenn.R.App.P. 3 Appeal as of Right ; Judgment of the Circuit Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jes Beard, Chattanooga, Tennessee, for the Appellant, Emily Lewis

Robert W. Sauser and Alison T. Shaw, Chattanooga, Tennessee, for the Appellee, Life Care Centers of America, Inc.

## OPINION

The Trial Court sustained Life Care's motion for summary judgment upon the ground that Life Care had no duty of care as to Ms. Lewis in that the acts resulting in her injury were not foreseeable.

Ms. Lewis appeals, raising the following issue:

> **Does a nursing home supervising the practical experience of a Licensed Practical Nursing student have a duty of care to the students the nursing home is so supervising?**

A more accurate statement of the issue would be the following: **"Under the facts developed in this case, does a nursing home supervising the practical experience of a Licensed Practical Nursing Student have a duty of care to the student the nursing home is so supervising?"**

The standard of review of a trial court's action in granting a summary judgment is set out in the case of <u>Staples v. CBL & Associates, Inc.</u>, 15 S.W.3d 83, 89 (Tenn. 2000), as follows:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

We will now review the evidence introduced below in accordance with the dictates of <u>Staples</u>, and in doing so will accept as true those statements of facts--which would be admissible at trial--contained in Ms. Lewis' brief:

## FACTS OF THE CASE:

During the period at issue in the lawsuit, the Appellant was a student at Nursetrainers, Inc, studying to become a Certified Nursing Assistant and was assigned to the Defendant's nursing home for practical experience. This relationship between Nursetrainers and the Appellee was longstanding and the CNA students from Nursetrainers were assigned to work under the supervision of CNA's employed by the Appellee.

In her Affidavit in support of her response to the Motion for Summary Judgment, the Appellant swore to the truth and accuracy of all allegations made in her Complaint to the extent "it would be apparent (she) would have first hand knowledge."

On the date of the alleged negligence, the Appellant was a student of Nursetrainers, Inc., was under the direct supervision of the employees of Lifecare Center of America at all times, specifically under the supervision of Sandra Gaston, a Certified Nursing Assistant employed by the Defendant.

On the date of the alleged negligence, the Appellant bathed a resident named Lou Ann Harrelson at the direction of the Appellant's staff, being left entirely alone with Ms. Harrelson to bathe her. Ms. Harrelson was a nursing

home resident with advanced "Lou Gehrig's Disease" and unable to see everything that was happening about her because of her limited range of motion.

The Appellant's own records for Ms. Harrelson, and the experience of staff members who reported that experience of their superiors, showed that Ms. Harrelson was prone to making unfounded complaints about imagined grievances, and also about any changes in her routine, . . .

At no time did Appellant do anything inappropriate to Ms. Harrelson, simply performing proper bathing procedures.

After the Appellant bathed Ms. Harrelson and left the facility Ms. Harrelson appeared calm until an employee of the Appellee told Ms. Harrelson that the woman who had just bathed her, the Appellant, was a lesbian, and at that point Ms. Harrelson became upset and agitated.

Ms. Harrelson then made allegations that the Appellant had raped her during the shower, with such allegations ultimately resulting in criminal charges being filed against the Appellant for rape, with such criminal charges subsequently dismissed on the Appellant's motion without trial.

In her original Complaint against the Appellee, the Appellant alleged Appellee was "liable to (her) for negligence in creating a situation where she was left unsupervised by (Appellant's) staff members to provide intimate care to a resident upset by any change in her routine and prone to making baseless complaints and to imagining offenses to her." It is only this cause of action at issue in the instant appeal and Appellant raises no challenge to the trial court's grant of the Motion for Summary Judgment on any other alleged cause of action.

The exact evidence contained in the record regarding Ms. Harrelson's predisposition to faultfinding and complaining is contained in the affidavit of Kimbra Dunning, a former employee of Life Care, which, as pertinent to this appeal, is as follows:

3. Prior to August 20, 1998, while I was so employed my duties and responsibilities several times included providing care for a resident named Lou Ann Harrelson, and in the course of such responsibilities I observed Ms. Harrelson several times make unreasonable demands of staff members, complain of any changes in her routine, and to imagine grievances which did not exist.

4. At one point in the course of my employment and prior to August 20, 1998, I specifically recall Ms. Harrelson complaining that staff members were not giving her all of her medications, and to address this concern nursing supervisors

at the nursing home instructed staff members to pulverize Ms. Harrelson's medication directly in front of her so she could see it being done before the medication was administered to her. (Ms. Harrelson's medication sometimes had to be pulverized to be administered to her because her condition prevented her from swallowing normally.)

5.     Multiple times in the course of employment and prior to August 18, 1998, I complained to nursing supervisors at the nursing home that Ms. Harrelson was unreasonable, too demanding, and imagined complaints that were not justified.

In addition to the foregoing, the undisputed proof, as shown by the affidavit of Tammy Bowers, a Certified Nursing  Assistant employed by Life Care is that "Ms. Harrelson had never made an allegation against anyone on the staff or premises of Life Care in regard to either physical or sexual abuse."

We first note that this affidavit was not timely in that it was an exhibit to a motion to alter and amend after the Trial Court had decided the case.  Moreover, if it had been properly filed, there is no contention that Ms. Harrelson had ever made any complaint of a sexual nature; consequently, we agree with the Trial Court that her action was not foreseeable and Life Care was not onerated with any duty of care as to Ms. Harrelson's actions in this regard.

Upon reviewing the whole record and in light of the matters hereinbefore stated, we conclude the Trial Court was correct in dismissing the case on the ground that the action of Ms. Harrelson was not foreseeable.

Before concluding, we observe that counsel for Life Care does recognize that under the Restatement of Torts there might be a duty of care if Life Care stood in some special relationship with Ms. Harrelson or Ms. Lewis.  Life Care counters this contention by pointing out that the Restatement applies only to situations involving physical harm.  However that may be, in light of the fact that no point was made as to this in Ms. Lewis' brief, we will notice it no further.

One final matter needs to be addressed.  Counsel for Life Care has filed a post-argument motion requesting that we award attorney fees and costs incident to counsel's appearance for oral argument because counsel for Ms. Lewis failed to appear.  We first note that counsel also requested oral argument, although counsel says in the motion that it was over only because counsel for Ms. Lewis had done so.  Of course, it was not necessary for counsel to request oral argument in such a case.  We further note that this assertion is not made in the affidavit seeking attorney fees, but only in the unsworn motion.  In light of the foregoing and the further fact that counsel was permitted to briefly address the Court in support of Life Care's position, we are disinclined to grant the motion and it is accordingly denied.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below.  Costs of appeal are adjudged against Emily Lewis and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE